# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| PAMELA CARNIECE TODD, | : |
| Plaintiff, | : |
| v. | : CA 16-00333-C |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | : : : |
| Defendant. | : |

## MEMORANDUM OPINION AND ORDER

Social Security Claimant/Plaintiff Pamela Carniece Todd brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security (the "Commissioner") denying her applications for a period of disability ("PoD") and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 16 ("In accordance with the provisions of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate

---

[1] Nancy A Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Berryhill is substituted for Carolyn W. Colvin as the proper defendant in this case.

Judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.")).

Upon consideration of the briefs of the parties, (Docs. 13 & 14), the administrative record, (Docs. 11), (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])"), and the arguments presented during the hearing held on February 22, 2017, it is determined that the Commissioner's decision is due to be **REVERSED** and **REMANDED** for further proceedings consistent with this decision.[2]

## I. Background

Todd was born on September 11, 1975, (R. 211 [SSA Ex. B1E]). Todd completed four (4) or more years of college. (R. 225 [SSA Ex. B3E]). Todd was employed as a clerk and a nutritionist. (R. 215 [SSA Ex. B2E]).

Todd filed applications for PoD and DIB with the Social Security Administration (the "SSA"),[3] on August 8, 2013. (R. 20). Todd, also, filed an

---

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 18 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

[3] "The Social Security Act's general disability insurance benefits program ('DIB') provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. 423." *Sanders v. Astrue*, No 11-049-N, 2012 WL 4497733, at *3 (S.D. Ala. Sept. 28, 2012).

application for SSI on August 8, 2013.[4] (R. 20). In Todd's applications, she alleged disability beginning on July 19, 2013, and, later, amended her alleged onset date to April 1, 2012.[5] (R. 20). After Todd's claim was denied, she requested a hearing, which was held via videoconference before an Administrative Law Judge ("ALJ") for the SSA on September 9, 2014. (R. 20). On February 17, 2015, the ALJ issued an unfavorable decision on Todd's claims, finding her "not disabled" under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (R. 17-35).

Todd requested review of the ALJ's decision by the Appeals Council for the SSA's Office of Disability Adjudication and Review. (R. 20). The Appeals Council denied Todd's request for review on June 2, 2016, which made the ALJ's the final decision of the Commissioner. (R. 1-7). On June 29, 2016, Todd filed this action pursuant to § 405(g)[6] and § 1383(c)(3)[7] to review the final decision of the

---

[4] "The Social Security Act's Supplemental Security Income ('SSI') is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. 1382(a), 1382c(a)(3)(A)-(C)." *Sanders*, 2012 WL 4497733, at *3.

[5] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03 (2005). For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she [was] insured. 42 U.S.C. § 423(a)(1)(A) (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

[6] "Any individual, after any final decision of the Commissioner . . . made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner . . . may allow." 42 U.S.C. §

3

Commissioner. (Doc. 1, at 1-2).

## II. <u>Standard of Review</u>

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and internal quotations omitted). The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id.* (citations omitted). "Even if the evidence preponderates against the Commissioner's findings, [the Court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); and *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). "Yet, within this narrowly circumscribed role, [the Court does] not 'act as automatons.'" *Bloodsworth*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert. denied*, 455

---

405(g).

[7] "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. 1383(c)(3).

4

U.S. 912, 102 S. Ct. 1263, 71 L. Ed. 2d 452 (1982)). The Court "must scrutinize the record as a whole, [*Ware*, 651 F.2d at 411]; *Lewis v. Weinberger*, 515 F.2d 584, 586-87 (5th Cir. 1975), to determine if the decision reached is reasonable, *Todd v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), and supported by substantial evidence, *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981)." *Bloodsworth*, 703 F.2d at 1239.

"In contrast to the deferential review accorded to the [Commissioner's] findings of fact, the [Commissioner's] conclusions of law, including applicable review standards are not presumed valid." *Martin*, 894 F.2d at 1529 (citing *MacGregor*, 786 F.2d at 1053; *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir. 1983), *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982); *Smith v. Schweiker*, 646 F.2d 1075, 1076 (5th Cir. Unit A June 1981). "The [Commissioner's] failure to apply the correct legal standard or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal." *Martin*, 894 F.2d at 1529 (citing *Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986); *Bowel v. Heckler*, 748 F.2d 629, 635-36 (11th Cir. 1984); *Smith*, 707 F.2d at 1285; *Wiggins*, 679 F.2d at 1389; *Ambers v. Heckler*, 736 F.2d 1467, 1470 (11th Cir. 1984)).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or

combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips v. Barnhart*, 357 F.3d 1232, at 1237-39 (11th Cir. 2004)).

### III. Claims on Judicial Review

1. "[T]he ALJ erred by failing to fulfill his duty to develop the record when he chose not to re-order a rheumatologic evaluation." (Doc. 13, at 3).

2. "[T]he ALJ's RFC lacks the support of substantial evidence as it fails to include any non-exertional limitations imposed by her pain." (Doc. 16, at 3).

### IV. Analysis

"At the first step, the ALJ must consider the claimant's current working situation. If the claimant is 'doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.'" *Phillips*, 357 F.3d at 1237 (alterations in original) (quoting 20 C.F.R. § 404.1520(a)(4)(i) & (b)). "If however, the claimant is not currently 'doing gainful activity' then the ALJ moves on to the second step." *Phillips*, 357 F.3d at 1237. At the first step, the ALJ determined Todd had "not engaged in substantial gainful activity since April 1, 2012, the alleged onset date." (R. 22).

6

> At the second step, the ALJ is to "consider the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability to do basic work skills." 20 C.F.R. § 404.1520(c). If the ALJ concludes that none of the claimant's impairments are medically severe, the ALJ is to conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii) & (c). If, however, the ALJ concludes that the claimant's impairments are medically severe, then the ALJ moves on to the third step.

*Phillips*, 357 F.3d at 1237 (alterations in original). At Step Two, the ALJ determined Todd had the following severe impairments: "fibromyalgia (FM), systemic lupus erythematous (SLE), osteoarthritis (OA), and cardiac arrhythmias/mitral valve prolapse MVP." (R. 59).

> At the third step, the ALJ again considers the "medical severity of [the claimant's] impairment(s)" in order to determine whether the claimant's impairment(s) "meets or equals" one of the listed disabilities. 20 C.F.R. § 404.1520(a)(4)(iii). Although the list is too voluminous to recite here, the idea is that the listings "streamline[ ] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987). If the ALJ concludes that the claimant's impairments meet or equal one of the listed disabilities and meet the duration requirement, the ALJ will conclude that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii) & (d). If, however, the ALJ concludes that the claimant's impairments do not meet or equal the listed impairments, then the ALJ will move on to step four.

*Phillips*, 257 F.3d at 1238 (alterations in original). At Step Three, the ALJ found that Todd "does not have an impairment or combination of impairments that meets

or medically equals the severity of one of the listed impairments" in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (R. 25).

> At the fourth step, the ALJ must assess: (1) the claimant's [RFC]; and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's RFC] based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step . . . . 20 C.F.R. § 404.1520(e).
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (alterations in original) (footnote omitted). At the fourth step, the ALJ assessed that Todd had the RFC:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(A) and 416.967(a) but should avoid any exposure to dangerous machinery and unprotected heights and concentrated expose to humidity and extreme heat and cold; is unable to climb ladders, ropes, or scaffolds and perform work requiring walking on uneven terrain; and can occasionally balance, kneel, crouch, crawl, stoop, and climb ramps and stairs.

8

(R. 26). Based on this RFC, the ALJ determined Todd is "capable of performing past relevant work as a telephone solicitor and medical clerk." (R. 31). Thus, the ALJ found that Todd was not disabled under the Social Security Act. (R. 31).

### A. Claim 1

> The ALJ has a basic duty to develop the medical record fully and fairly. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). "It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984). "In evaluating the necessity for a remand, we are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (internal quotation marks omitted).

*Rothfeldt v. Acting Comm'nr of the Soc. Sec. Admin.*, 669 F. App'x 964, 967 (11th Cir. 2016).

At the hearing held before the ALJ, the ALJ stated he would like for a "rheumatologist to examine [ ] Todd" and "complete a medical source statement or a physical capacity evaluation on [ ] Todd" to "have a little more information concerning [Todd's] situation with the lupus." (R. 63). As a result, Oluyinka Adediji, M.D., who specialized in internal medicine, performed a consultative examination of Todd on October 21, 2014, and completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form. (R. 355-65 [SSA Ex. B5F]). Despite the fact Dr. Adediji was not a specialist in rheumatology, the ALJ reasoned Dr. Adediji's findings were "essentially consistent with those of

9

[Todd's] treating physician," Daniel C. Clower, III, M.D., and "little would be gleaned from a rheumatologic evaluation." (R. 30). The ALJ determined there was enough information in the record for him to determine whether Todd was disabled.

Dr. Adediji assessed Todd had myofascial pain syndrome: fibromyalgia, history of lupus without systemic manifestation, hypertension, pelvic pain: h/o endometriosis, and generalized anxiety disorder, and he concluded Todd's pain that was consistent with fibromyalgia was her main limiting factor. (R. 358 [SSA Ex. B5F]). Further, Dr. Adediji noted despite a reference to a positive double stranded DNA test in Todd's medical records that were provided by the Disability Determination Service ("DDS"), her records did not include a rheumatologic profile or rheumatologist's evaluation. (R. 359 [SSA Ex. B5F]). Todd's medical records prepared by Dr. Clower indicate she needed to be examined by a rheumatologist but was not able to do so because she did not have health insurance. (*See* R. 289 [SSA Ex. B1F] ("We will try to get [Todd] an appointment at UAB rheumatology on a charity case."); R. 293 [SSA Ex. B1F] ("Contacted UAB, rheumatologist, no [insurance,] must apply for charity case."); R. 336 [SSA Ex. B3F] ("Send to rheumatology later."); R. 338-39 [SSA Ex. B3F] ("We need to get [Todd] to a rheumatologist. . . . I still think she needs a rheumatologist. . . . Called Rheumatologist at UAB. [Todd] will need to call charity case to see if she qualifies for assistance."); & R. 342 [SSA Ex. B3F] ("[Todd] is trying to on some insurance.")).

After thoroughly reviewing the medical records, the Court finds the ALJ erred in failing to fully develop the record in regard to the extent of Todd's physical impairments. The record indicates Todd's treating physician, Dr. Clower, believed she needed to be evaluated by a rheumatologist and Dr. Adediji's evaluation was performed without the results of a rheumatologic evaluation. Therefore, the record was not fully developed for the ALJ to make an informed decision.

For these reasons, the Court **SUSTAINS** Todd's assertion of reversible error in Claim 1.

## B. Claim 2

In formulating a claimant's RFC, an ALJ must "make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.) (citations and internal quotation marks omitted).

> [A claimant's] impairment(s) and related symptoms, such as pain, may cause limitations of function or restrictions which limit [a claimant's] ability to meet certain demands of jobs. These limitations may be exertional, nonexertional, or a combination of both. Limitations are classified as exertional if they affect [a claimant's] ability to meet the strength demands of jobs. . . . Limitations or restrictions which affect [a claimant's] ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered nonexertional.

20 C.F.R. § 404.1569a(a). Nonexertional limitations include "difficulty functioning

11

because [the claimant is] nervous, anxious, or depressed;" "difficulty maintaining attention or concentrating;" "difficulty understanding or remembering detailed instructions;" "difficulty in seeing or hearing;" "difficulty tolerating some physical feature(s) of certain work settings, e.g., [a claimant] cannot tolerate dust or fumes;" and "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 404.1569a(c)(i)-(vi).

The ALJ noted he had "no doubt that [Todd] experiences significant pain and other symptoms," (R. 30), but Todd argues despite the ALJ's admission, he "failed to include any nonexertional limitations that [Todd's] undoubtedly significant pain would impose-such as any concentration, persistence, and pace limitation or a limitation to unskilled work," (Doc. 13, at 9). The ALJ found Todd had the RFC to "perform sedentary work," which was based on her exertional limitations. (R. 26). Additionally, as to Todd's nonexertional limitations, the ALJ found she "should avoid any exposure to dangerous machinery and unprotected heights and concentrated exposure to humidity and extreme heat and cold;" she is "unable to climb ladders, ropes, or scaffolds and perform work requiring walking on uneven terrain;" and she can "occasionally balance, kneel, crouch, crawl, stoop, and climb ramps and stairs." (R. 26). While the ALJ did not specifically address in Todd's RFC her nonexertional limitations with regard to concentration, persistence, and pace or limitation to

12

unskilled work, those possible limitations were addressed in the ALJ's decision and would not tend to affect her RFC. For instance, the ALJ noted Todd reported she could "pay attention as long as necessary, [(R. 245 [SSA Ex. B5E])];" she "finishes the tasks that she starts, [(R. 245 [SSA Ex. B5E])];" she "follows both verbal and written instructions very well, [(R. 245 [SSA Ex. B5E])];" and she "handles changes in routine well and stress very well 'sometimes,' [(R. 246 [SSA Ex. B5E])]." (R. 29). The ALJ noted Todd's reported level of function was "simply inconsistent with the chronic severe pain and debilitating fatigue [she] alleges and with the memory deficits she endorses." (R. 29). Additionally, in a hypothetical posed to the vocational expert ("VE") at the hearing before the ALJ, the ALJ stated Todd was "able to sustain sufficient concentration, [persistence, and] pace," (R. 61). Therefore, the ALJ made a finding as to nonexertional limitations with regard to concentration, persistence, and pace in his decision without specifically addressing that finding in Todd's RFC.

As to limiting Todd to unskilled work, at the hearing before the ALJ, after the ALJ posed his first hypothetical, the VE testified Todd could perform her past work of telephone solicitor and medical clerk, which both were classified as semi-skilled labor; and Todd could, also, perform the jobs of account clerk, order clerk, and table worker, which all were classified as unskilled labor. (R. 59-60). Additionally, in the ALJ's decision, he concluded, based on Todd's RFC, Todd could perform her past

13

relevant work as a telephone solicitor and medical clerk, which both are classified as semi-skilled labor. (R. 31).

Accordingly, the Court finds the ALJ properly found whether Todd's nonexertional limitations were severe enough to preclude a wide range of employment at the given work capacity level indicated by her exertional limitations. For these reasons, the Court **OVERRULES** Todd's assertion of reversible error in Claim 2.

## V. Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued June 2, 2016, denying Claimant's benefits be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991), for further proceedings consistent with this decision. The remand pursuant to sentence four of § 405(g) makes plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292, 112 S. Ct. 2625, 125 L. Ed. 2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 22nd day of December 2017.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**